**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ASANTE CARTER,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **PARKWAY CORPORATION,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Asante Carter (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Parkway Corporation (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), the Philadelphia Fair Practices Ordinance ("PFPO") and public policy. In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Philadelphia, PA.
3. Upon information and belief, Defendant Parkway Corporation is a real estate and parking company with a location at 151 N 15th Street, Philadelphia, PA 19102 and corporate

headquarters at 150 N Broad Street, Philadelphia, PA 19102.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state and local law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's

original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII, the ADA, the PHRA and the PFPO.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging national origin and disability discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2026-06312 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated July 8, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of Plaintiff's receipt of his Right to Sue in this matter, as it relates to Plaintiff's federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to Plaintiff's PHRA and PFPO claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
20. Plaintiff's national origin is America.
21. On or about September 29, 2025, Defendant offered Plaintiff the position of Parking Attendant.
22. The offer letter stated that position was located at 151 N 15th Street, Philadelphia, PA 19102 and that Plaintiff's schedule would be 8:00 a.m. to 4:00 p.m., five (5) days per week.
23. Importantly, the offer letter did not refer to Plaintiff's position as a "floater" or that he would be assigned to multiple locations.
24. On or about September 30, 2025, Plaintiff accepted the offer.
25. On or about October 13, 2025, Plaintiff began working for Defendant.
26. Plaintiff was well qualified for his position and performed well.

## THE 15TH & CHERRY LOT STAFF

27. During Plaintiff's employment, the 15th & Cherry lot was regularly staffed by four (4) employees.
28. Those employees were Plaintiff; Michael Appiah (Ghanaian), Field Supervisor; Saye Debleye (Liberian), Part-Time Parking Representative; and Cianni Matthews, Parking Representative.
29. Appiah and Debleye performed the same core lot duties as Plaintiff.

30. Those duties included parking customer vehicles, collecting fees, and storing and retrieving customer keys.
31. Appiah worked a fixed schedule of Monday through Friday, 8:00 a.m. to 4:00 p.m., at the 15th & Cherry lot.
32. Defendant also gave Appiah overtime opportunities.
33. Defendant did not require Appiah or Debleye to rotate among Defendant's other locations.

**DEFENDANT DESIGNATED PLAINTIFF AS A "FLOATER"**

34. Shortly after Plaintiff's hire, Defendant began sending Plaintiff to other locations to cover open shifts and absent employees.
35. Defendant's managers referred to Plaintiff as a "floater."
36. Defendant did not assign Appiah or Debleye to this role.
37. On or about October 24, 2025, Plaintiff asked Dice about the "floater" designation.
38. Dice responded in writing: "We do not have a separate job description for a floater as it is not a separate position."
39. On or about October 30, 2025, Rhoden texted Plaintiff: "Hi Asante, I understand you are working the 2-10 shift tomorrow. Please do not come in for the am shift at Cherry."
40. Defendant also assigned Plaintiff to evening shifts at its lot at 322 North Broad Street.
41. Derrick Coates, Manager, oversaw the 322 North Broad Street lot.
42. On or about November 3, 2025, Coates texted Plaintiff that a new employee was starting at 322 North Broad Street.
43. Coates wrote that Plaintiff could "return to your normal schedule with Henry."

44. That same day, Rhoden directed Plaintiff to report to the 15th & Cherry lot on Tuesday, Wednesday, and Thursday only.

45. Defendant did not schedule Plaintiff to work on Monday, November 3, 2025.

46. On or about November 6, 2025, Plaintiff asked Rhoden whether to report to the 15th & Cherry lot the next day.

47. Rhoden responded: “No sir. It will be a slow day.”

48. Plaintiff responded: “So where do I report to get my 40hrs? Only worked 3 days this week.”

49. Rhoden offered Plaintiff only 4:00 p.m. to 11:00 p.m. shifts on Friday, Saturday, and Sunday.

50. Defendant did not schedule Plaintiff to work on Friday, November 7, 2025.

51. When Plaintiff asked how to obtain full-time hours, Rhoden responded: “I will keep you posted.”

52. Appiah and Debleye worked their regular schedules at Defendant’s 15th & Cherry lot that week.

**PLAINTIFF COMPLAINED TO DEFENDANT’S CHIEF EXECUTIVE OFFICER**

53. On or about November 8, 2025, Plaintiff emailed Robert Zuritsky, President and Chief Executive Officer.

54. In that email, Plaintiff complained that Defendant was reassigning Plaintiff and cutting Plaintiff’s hours while Plaintiff’s coworkers of other national origins kept their regular schedules.

55. The next day, Jerome, Parkway Bellevue Site Manager, texted Plaintiff: “Hey Asante, Henry shared your message yesterday. Are you able to assist us next Saturday?”

56. Plaintiff again declined.

57. Plaintiff wrote that he was "overburdened depleted and depressed from helping out at other locations."

58. On or about November 12, 2025, Donald Hurford, Vice President of Human Resources, issued Plaintiff a letter regarding the expectations of the "floater" role.

59. Defendant continued to assign Plaintiff to other locations.

**PLAINTIFF SUFFERED A WORKPLACE INJURY**

60. On or about November 19, 2025, Defendant directed Plaintiff to cover the duties of Noufou LNU, Maintenance Employee, while Noufou was on vacation.

61. Noufou is not of American national origin.

62. The assignment required Plaintiff to travel among multiple locations with maintenance equipment.

63. The equipment included a broom, a dustpan, a leaf blower, and trash bags.

64. Plaintiff told Rhoden and Hurford that Plaintiff relied on public transportation and did not have a vehicle to move the equipment.

65. Defendant did not provide Plaintiff with the vehicle and tools that Defendant provided to Noufou.

66. On or about November 19, 2025, Plaintiff suffered a back injury while performing the maintenance duties.

67. The injury resulted from repetitive bending.

68. Plaintiff reported the injury that day by telephone and text message to Felix LNU, Manager.

69. On or about November 20, 2025, Plaintiff reported the injury by email to multiple managers.

70. Plaintiff missed work on or about November 20 and on or about November 21, 2025 because of the injury.

71. Defendant did not open a workers' compensation claim for Plaintiff or refer him for medical treatment.

72. Rhoden later provided Plaintiff with internal company injury forms.

73. Plaintiff returned the forms to Rhoden on or about December 3, 2025.

74. On or about November 24, 2025, Plaintiff emailed Coates, Rhoden, and other managers, with a copy to Dice.

75. Plaintiff wrote that Plaintiff was "not available and unable to, 'help' in any part time capacity, with open positions or with other employees schedules or at any other locations."

76. Plaintiff signed the email: "Parking Attendant, 15th & Cherry 8am-4pm Mon - Fri."

77. Plaintiff continued to experience back pain after the injury.

## DEFENDANT DENIED PLAINTIFF TOOLS AND ACCESS THAT WAS PROVIDED TO PLAINTIFF'S COWORKERS

78. Defendant did not issue Plaintiff a set of lot keys at hire.

79. On or about October 20, 2025, Plaintiff walked to a hardware store at 20th and Pine Streets and paid to copy keys needed for the lot.

80. Defendant's headquarters, which borders the 15th & Cherry lot, has a maintenance department that makes keys for employees.

81. Defendant did not issue Plaintiff a key to the customer vehicle key box at the 15th & Cherry lot.

82. Access to the key box was necessary to store and retrieve customer keys.

83. Appiah and Debleye each had a personal key to the key box.

84. Defendant did not issue Plaintiff a key to the employee restroom.

85. Appiah and Debleye each had a restroom key.

86. Plaintiff had to borrow a key from contracted security guards to use the restroom.

87. When security was unavailable, Plaintiff had to leave the property to use a restroom at a nearby restaurant.

88. Appiah repeatedly took the keys to the outdoor kiosks and the employee microwave home with him.

89. On or about March 17, 2026, Plaintiff texted Rhoden: "Please have Mike stop taking the keys to the outdoor kiosks home, which is also the keys to the microwave. This is 2nd time in 5 days its happened."

90. On or about March 25, 2026, Plaintiff texted Rhoden: "Mike has left with the keys again today."

91. Rhoden responded: "I will work on getting you a set of keys."

92. Plaintiff did not receive a key box key until late March 2026.

93. Plaintiff received the key only after Debleye asked Defendant's maintenance department to make one for Plaintiff.

94. On or about April 29, 2026, Plaintiff complained to Hurford and Rhoden about the lack of a restroom key.

95. Defendant never issued Plaintiff a restroom key.

## PLAINTIFF'S JANUARY AND FEBRUARY 2026 COMPLAINTS

96. On or about January 19, 2026, Rhoden scheduled Plaintiff to work on the Martin Luther King Jr. holiday.

97. Rhoden then sent Plaintiff home after a half day due to a lack of business.

98. Rhoden did not schedule Plaintiff to make up the lost hours on or about January 20, 2026.

99. On or about January 21, 2026, Plaintiff and Debleye were working at the 15th & Cherry lot and needed a pen to log customer keys.

100. Plaintiff went to Defendant's Human Resources office, which borders the lot, and asked Dice for a pen.

101. Dice told Plaintiff to "[c]all your manager."

102. Minutes later, Debleye went to the same office and asked Dice for a pen.

103. Dice gave Debleye a pen.

104. On or about January 22, 2026, Plaintiff emailed Rhoden.

105. Plaintiff complained that Plaintiff was "being managed to not receive the full time hours of my position."

106. Plaintiff also wrote: "I also feel discriminated against by Zech yesterday…Why was Saye given a pen but I was not?"

107. After the email, Hurford met with Plaintiff and reprimanded Plaintiff.

108. On or about January 23, 2026, Defendant's management told Plaintiff to buy work supplies with Plaintiff's own money rather than ask Human Resources for them.

109. On or about February 1, 2026, Plaintiff emailed Rhoden and Hurford.

110. Plaintiff wrote that Rhoden had "been retaliatory" and "discriminatory as previously explained before."

111. Plaintiff wrote that "a person of a different Nationality, Ghanaian, Mike Appiah is scheduled his normal daily weekly hours that have been Mon-Fri 8am-4pm."

112. Plaintiff wrote that Rhoden had "additionally granted Mike A., opportunity to work overtime hours within the Workweek."

113. Plaintiff also reported that Lawal LNU, a Defendant employee, had greeted Plaintiff by saying: "You're the other floater."

114. Plaintiff wrote: "Please reference me by the job title I agreed to."

115. On or about February 9, 2026, Hurford issued Plaintiff a second letter regarding the "floater" role.

116. On or about February 12, 2026, Hurford registered Plaintiff for a DiSC workplace personality assessment.

117. Upon information and belief, Defendant did not investigate Plaintiff's complaints of discrimination and retaliation.

118. Defendant continued to assign Plaintiff to other locations and shifting schedules, including at its Art Alliance lot.

119. Appiah kept his fixed Monday through Friday schedule at the 15th & Cherry lot.

**PLAINTIFF'S DISABILITIES**

120. Plaintiff continued to suffer from back pain caused by the November 19, 2025 injury.

121. On or about April 22, 2026, Plaintiff reaggravated his workplace back injury and texted Rhoden: "My back is very sore and giving me issues."

122. Plaintiff's back condition limits Plaintiff's ability to lift, bend, and twist.

123. In or around April 2026, Plaintiff began treatment with Dr. Kristine V. Spano, Psy.D., Licensed Clinical Psychologist.

124. Due to the workplace stress, Plaintiff has a mental health condition that affects cognitive organization, tolerance for environmental variability, and the ability to adapt to changes in routine.

125. When Defendant assigned Plaintiff to unfamiliar locations and shifting schedules, Plaintiff experienced anxiety, sweating, tightness of breath, a racing heartbeat, nausea, and difficulty concentrating.

126. Plaintiff's condition onset by the subjected working conditions substantially limits major life activities including concentrating, thinking, and breathing during episodes.

127. On or about April 30, 2026, Plaintiff called out sick for a 2:00 p.m. to 10:00 p.m. shift at the Art Alliance lot.

128. On or about May 1, 2026, Plaintiff called out sick for a second 2:00 p.m. to 10:00 p.m. shift.

## PLAINTIFF FILED A CHARGE OF DISCRIMINATION WITH THE EEOC AND REQUESTED REASONABLE ACCOMMODATIONS

129. On or about May 3, 2026, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2026-06312.

130. The Charge alleged national origin discrimination and retaliation.

131. Defendant received notice of the Charge on or about May 4, 2026.

132. On or about May 5, 2026, Plaintiff emailed Rhoden and Hurford: "Henry, I need your change in work location expectations in writing please."

133. That same day, Plaintiff asked Hurford for a written outline of the "floater" role.

134. Hurford responded that the "expectations of a Floater position have been explained in person on multiple occasions, and in writing in two separate letters."

135. Hurford did not provide a job description.

136. Plaintiff replied: "You have stated my job offer in its vagueness is a company mistake."

137. On or about May 6, 2026, Plaintiff submitted a written accommodation recommendation from Dr. Spano to Defendant.

138. Dr. Spano recommended that Plaintiff be assigned to a single, consistent work location.

139. Dr. Spano recommended that Plaintiff keep a consistent schedule with fixed start and end times.

140. Dr. Spano also recommended advance notice of changes, scheduled breaks, consistent duties, and clear communication.

141. Dr. Spano wrote that the accommodations were "medically necessary to mitigate functional impairments associated with the employee's condition."

142. Plaintiff's offer letter already provided for a single location and a fixed schedule.

143. On or about May 6, 2026, Rhoden told Plaintiff that only Monday through Thursday was available to Plaintiff at the 15th & Cherry lot.

144. Rhoden also assigned Plaintiff to work at the Art Alliance lot on Thursday, May 7 and Friday, May 8, 2026.

145. On or about May 7, 2026, Plaintiff called out sick for May 7 and May 8, 2026.

146. Plaintiff wrote that the sickness was "caused from being mandated to report to other locations that are not my work site."

147. Hurford responded: "Sorry to hear you are feeling anxiety about working at the Art Alliance lot. I thought working at that location would be something you might prefer, as I believe it is more of a tipping environment than the 15th and Cherry lot."

148. Hurford directed Plaintiff to Jennifer Ostroff, Human Resources Manager, regarding Plaintiff's limitations.

149. Plaintiff replied to Hurford, Rhoden, and Ostroff the same day.

150. Plaintiff wrote that working at other locations caused “physical sensations that are not normal to me, with tightness in my breathing and heart jumpy when I have to work in places like Art Alliance.”

151. Plaintiff wrote: “I can work at the site I was hired for with the duties that were explained for that site at 15th & Cherry.”

152. On or about May 8, 2026, Plaintiff informed Ostroff that Plaintiff was cleared to return to work at the 15th & Cherry lot on May 11, 2026.

**<u>DEFENDANT REDUCED PLAINTIFF’S HOURS AND ASSIGNED THE HOURS TO ANOTHER EMPLOYEE</u>**

153. On or about May 11, 2026, Plaintiff met with Ostroff to discuss Dr. Spano’s recommendations.

154. Ostroff told Plaintiff that Rhoden said a fixed location and schedule at the 15th & Cherry lot was not available for Plaintiff.

155. Ostroff raised other positions with Plaintiff, including maintenance positions.

156. After the meeting, Ostroff emailed Plaintiff: “I spoke with Henry and he has Monday through Thursday available next week (May 18 - 21), 10:00 am - 6:00 pm, at 15th and Cherry.”

157. Ostroff added: “I will be in touch as soon as I have information to share regarding another location.”

158. 157. Defendant reduced Plaintiff from five (5) scheduled days per week to four (4).

159. Defendant removed Plaintiff from the schedule on Friday, May 15 and Friday, May 22, 2026.

160. At the same time, Defendant transferred Mehenni LNU (Algerian), Parking Representative, to the 15th & Cherry lot.

161. Defendant scheduled Mehenni at the 15th & Cherry lot Monday through Friday, 8:00 a.m. to 4:00 p.m.

162. Mehenni's schedule was the same schedule stated in Plaintiff's offer letter.

163. Mehenni told Plaintiff that Mehenni was covering for Matthews, who was on an extended absence.

164. On or about May 13, 2026, Plaintiff emailed Ostroff, "I have no functional limitations in doing the required duties of my job as Parking Representative", "a location change is not something that I am requesting", and that Mehenni, "of a different Nationality than me," had been given the Monday through Friday, 8:00 a.m. to 4:00 p.m. schedule at the 15th & Cherry lot.

165. Plaintiff complained, "I feel that is being discriminatory based on disability discrimination laws."

166. Plaintiff also complained that Defendant had not offered workers' compensation paperwork after Plaintiff's November 2025 injury.

**PLAINTIFF REPORTED A COWORKER THREATEN HIM, BUT DEFENDANT DID NOT ADDRESS PLAINTIFF'S COMPLAINT**

167. On or about May 11, 2026, a Defendant employee parked near Plaintiff's booth at the 15th & Cherry lot.

168. Plaintiff greeted the employee.

169. The employee formed a hand into the shape of a gun and mimicked firing it at Plaintiff three times.

170. On or about May 12, 2026, Plaintiff reported the incident to Hurford and Rhoden.

171. Hurford and Rhoden met with Plaintiff about the report.

172. Hurford acknowledged that the employee had "pointed at you."

173. However, Hurford not anyone else at Defendant took corrective action against the employee.

**PLAINTIFF REAGGRAVATED HIS WORKPLACE INJURY**

174. On or about May 14, 2026, Plaintiff reaggravated the back injury at work.

175. On or about May 17, 2026, Plaintiff was treated at the Temple University Hospital Chestnut Hill Hospital Emergency Department.

176. Lindsey Wolf, CRNP, wrote that Plaintiff "is able to perform the physical duties of his hired position."

177. Wolf restricted Plaintiff from lifting more than 10 to 15 pounds and from repetitive bending and twisting

178. Wolf directed Plaintiff to follow up with orthopedics.

179. On or about May 18, 2026, Plaintiff emailed Ostroff and attached the emergency department note.

180. Plaintiff wrote: "I believe and feel it has been a retaliation and discrimination based on my Doctor's note I submitted on 5/6/2026 for Henry to only have 4 days of Monday - Friday available to only me suddenly, when employees of a different Nationality at the same location have 5 days from Monday - Friday available to them."

181. Plaintiff asked: "Is Parkway Corporation denying my medical request accommodation of a fixed location and instead making mandatory a change in location?"

182. Plaintiff wrote that the back injury was the primary reason Plaintiff could not safely work at other locations or in other positions.

183. On or about May 19, 2026, Dr. Armando A. Mendez, Orthopedic Surgeon, of Premier Orthopaedics, examined Plaintiff.

184. Dr. Mendez excused Plaintiff from work until May 25, 2026.

185. Plaintiff provided the note to Defendant on or about May 20, 2026.

186. On or about May 19, 2026, Ostroff emailed Plaintiff that Plaintiff's "interim schedule will be Monday through Friday, 10:00 - 6:00 pm at 15 and Cherry until we find a longer-term solution."

187. Ostroff wrote that Plaintiff would be paid "for the two days that you were not on the schedule (Friday, May 15 and May 22)."

**DEFENDANT RESPONDED TO THE EEOC CHARGE AND REMOVED PLAINTIFF FROM WORK**

188. On or about May 21, 2026, Hurford emailed Plaintiff a letter titled "Summary of Complaint Investigation, Findings, and Required Workplace Expectations."

189. The letter responded to the complaints in Plaintiff's EEOC Charge.

190. The letter rejected Plaintiff's complaints and set out workplace expectations for Plaintiff.

191. Importantly, Hurford did not interview Plaintiff before issuing the letter.

192. Hurford asked Plaintiff to "refrain from emailing me questions and any response to it, until we meet in person."

193. On or about May 26, 2026, Plaintiff reported to work at the 15th & Cherry lot.

194. Plaintiff was medically cleared and ready to work.

195. Hurford and Rhoden met with Plaintiff to review the May 21, 2026 letter.

196. Hurford described the matters raised in Plaintiff's EEOC Charge as a "non-issue" and a "distraction."

197. Hurford placed Plaintiff on paid administrative leave and sent Plaintiff home.

198. That night, Plaintiff emailed Hurford, Rhoden, and Ostroff to object to the leave as retaliation for Plaintiff's EEOC Charge.

199. Plaintiff asked Defendant to identify the policy under which Defendant placed Plaintiff on leave.

200. On or about May 27, 2026, Hurford responded: "As we told you in our meeting on Tuesday, we are putting you on a paid administrative leave to give us time to evaluate your response to us in our meeting, to the issues described in the 5-21-26 letter I sent you."

201. Hurford did not identify any policy, medical or performance reason for the leave.

202. Appiah, Debleye, and Mehenni continued to work their regular schedules at the 15th & Cherry lot.

**DEFENDANT TERMINATED PLAINTIFF'S EMPLOYMENT**

203. On or about June 1, 2026, Plaintiff reported for a meeting with Hurford and Rhoden.

204. Plaintiff delivered a written Position Statement and Policy Inquiry to Hurford, Rhoden, and Ostroff.

205. The Position Statement identified Plaintiff's EEOC Charge and restated Plaintiff's complaints of national origin and disability discrimination as well as retaliation.

206. The Position Statement stated that Plaintiff was medically cleared and available to work.

207. At the meeting, Hurford told Plaintiff that Plaintiff could be terminated immediately or receive a severance offer.

208. Plaintiff told Hurford that any severance offer would need to be reviewed by his counsel.

209. As a result, Hurford extended Plaintiff's administrative leave.

210. On or about June 2, 2026, Hurford asked Plaintiff to attend another meeting on June 4, 2026.

211. On or about June 3, 2026, Hurford wrote: "The meeting is to review your severance and release offer."

212. The same day, Plaintiff emailed Hurford asking for Plaintiff's employment status and the policy governing the leave.

213. On or about June 4, 2026, Defendant terminated Plaintiff's employment.

214. Hurford signed the termination letter which cited Plaintiff's "continued pattern of raising…complaints" and Plaintiff's June 3, 2026 communications as the reason for Plaintiff's termination and stated further that it was "not feasible to continue the employment relationship."

215. Defendant terminated Plaintiff one month after receiving notice of Plaintiff's EEOC Charge.

216. Defendant terminated Plaintiff less than one month after Plaintiff's requested accommodations.

217. Defendant terminated Plaintiff three (3) days after Plaintiff delivered the June 1, 2026 Position Statement.

218. Defendant did not terminate Appiah, Debleye, or Mehenni.

219. Defendant never provided Plaintiff with a fixed location and fixed schedule as Dr. Spano recommended.

220. Defendant's stated reasons for terminating Plaintiff are pretext for discrimination and retaliation.

221. Defendant discriminated against Plaintiff due to his national origin and disability, failed to provide a reasonable accommodation and retaliated against Plaintiff for reporting the aforementioned discrimination and requesting a reasonable accommodation in violation of Title VII, the ADA, the PHRA and the PFPO.

222. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – NATIONAL ORIGIN DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

223. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

224. Plaintiff's national origin is the United States.

225. Plaintiff was qualified to perform the job for which he was hired.

226. Plaintiff suffered adverse job actions, including, but not limited to termination.

227. Similarly situated people outside of Plaintiff's protected class (i.e., of a different national origin) were treated more favorably than Plaintiff.

228. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

229. Defendant discriminated against Plaintiff on the basis of his protected class.

230. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

231. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

232. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

**COUNT II – DISCRIMINATION BASED ON NATIONAL ORIGIN**
**PENNSYLVANIA HUMAN RELATIONS ACT**

233. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

234. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (National Origin of United States).

235. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – DISCRIMINATION BASED ON NATIONAL ORIGIN**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

236. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

237. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (National Origin of United States).

238. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IV – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

239. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

240. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a

record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

241. Plaintiff was qualified to perform the job.

242. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

243. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

244. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

245. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

246. The purported reason for Defendant's decision is pretextual.

247. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

248. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

249. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

250. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – DISABILITY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

251. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

252. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

253. Plaintiff was qualified to perform the job.

254. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

255. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

256. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

257. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

258. The purported reason for Defendant's decision is pretextual.

259. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

260. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

261. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VI – DISABILITY DISCRIMINATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

262. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

263. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

264. Plaintiff was qualified to perform the job.

265. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

266. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

267. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

268. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

269. The purported reason for Defendant's decision is pretextual.

270. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

271. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

272. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered

damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VII – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

273. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

274. Plaintiff engaged in activity protected by Title VII.

275. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

276. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VIII – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

277. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

278. Plaintiff engaged in activity protected by the ADA.

279. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

280. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra.*

**COUNT IX – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

281. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

282. Plaintiff engaged in activity protected by the PHRA.

283. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

284. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT X – RETALIATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

285. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

286. Plaintiff engaged in activity protected by the PFPO.

287. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

288. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT XI – RETALIATION**
**WRONGFUL TERMINATION**

289. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

290. Plaintiff was an at-will employee with Defendant.

291. Although Pennsylvania adheres to the at-will employment doctrine, an employee may bring a cause of action for termination "where the termination implicates a clear mandate of public policy." *Weaver v. Harpster,* 975 A.2d 555, 563 (Pa. 2009).

292. Defendant terminated Plaintiff in retaliation for filing a worker's compensation claim.

293. Termination in retaliation for the exercise of rights under the Workers' Compensation Act is a violation of a clear mandate of public policy in the Commonwealth of Pennsylvania.

294. The termination therefore was wrongful in contravention of public policy of the Commonwealth of Pennsylvania.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Asante Carter, requests that the Court grant him the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages where available;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(i) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: October 6, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*